We've been sitting with Judge López from the First Circuit and I was about to thank him when I realized that we have our own Judge Greenaway here on a case that was continued from a prior sitting. So we'll call that case Zebrowski v. Evonik Degussa Corporation et al. Michael Graham May it please the Court, my name is Michael Graham and I'm here today on behalf of Defendant Appellants, Evonik Degussa Corporation Administrative Committee, Evonik Degussa Corporation Retirement Plan, and the Evonik Romax Incorporated Non-Qualified Pension Plan. And you've just used a minute of your time, no I'm just kidding. Do you wish time for rebuttal? I would like to reserve four minutes, Your Honor. All right. Your Honors, the defining issue in this case is one of ERISA plan interpretation, albeit arising within the complex world of ERISA pension plan and Top Hat plan calculations. Generally, Top Hat plans follow a typical calculation setup. Highly paid executives are given additional benefits based on compensation, including bonuses and other payments that exceed that permitted a qualified plan under the Internal Revenue Code. Is Article 16 off the table? I'm sorry, Your Honor? I said, is Article 16 off the table? Article 16 in the supplemental plan. Your Honor can remind me what's. Well, so you ordered before the district court that Article 16 of the supplemental plan gave you unfettered discretion to change the terms of the plan at any time, and the district court ruled against you on this point, but it wasn't brief, so I presume it's waived, yes? I would agree we have not pursued that argument. I believe that the position is that that provision still stands and does permit them to change the terms at any time. However, we have not pushed that on this appeal. Would you say, would you tell us exactly how you read B of 7.2.2 to include in it the COLA? Yes, Your Honor. The way we read that provision, there are two phrases in the B factor of 7.2.2. The first is the basic amount of early retirement benefits. What says normal? Does that really matter? It doesn't in this case. I think both the parties agree that that is a typographical error. Well, they did retire early. They did. So the early has to be what would be normal. Exactly, Your Honor. They are early retirement, but the fact is that there was a typographical error that the parties agreed to, and we believe that that phrase is defined by the supplemental plan itself in Section 2.7, where in the focus of that definition is the benefit the participant is entitled to, and there's no mention of the pension plan. It's to the extent of it's the benefit they're entitled to under the pension plan, which we believe is the accrued benefit, which would include the COLA under ERISA and other law. Okay. It says entitled to. It doesn't say the amount which they were, which they actually received, which is, is that the same thing, if you will? We believe it is, and we can look to the Ahearn decision from this Court, where in a similar situation where an offset, in that case it was an offset for Social Security payments that were paid within a top hat context, this Court found that the words entitled to meant received, so that it was only proper to offset the full amount that was received. Anything less would permit a double recovery for the plaintiffs. Because that's what they got. Presumably, under B, this says we're going to deduct from A what they received from early retirement from the normal pension plan, which in this instance included the COLA, correct? Exactly, Your Honor. That's our position, is that to do otherwise, you would get payments for the same compensation twice. And in this case, there is no COLA for a lump sum payment under the supplemental plan. There was no legal obligation to do so. So when the pension plan COLA amendment was passed in 2008, it was purely for that pension plan, that qualified plan, and was due to the Seventh Circuit decision in Williams, which involved a plan that mirrored the plan that was issued here. It's interesting, I could question Williams, but nobody is questioning Williams. Williams seems very strange that you have a, you try to do an actuarial calculation of a possible future cost of living increase. But no one's arguing that Williams is off the radar. We have had traveled that course before, Your Honor, with respect to Williams. We agree with you. We think there are troubles with the ultimate holding in Williams, but the law is what it is at this point. And their finding there was that ERISA is the one requiring the accrued benefits to include the COLA. So I have a couple of questions on this now, since we're focusing on this, the 2008. So tell me, what's the course of conduct prior to 2008 to support the view that the 2005 supplemental plan was clarifying rather than an amendment? I think the parties agree that there was no change to the language. Our position was that that language was purely clarifying. We don't think it changed anything, and to be honest, we'd be fine approaching it with the 1999 language. So I don't understand. If it didn't change anything, then how does the calculus change? Because subsequent to this, it becomes the supplemental plan minus the COLA. It wasn't that way before, so what do you mean there was no change? I would disagree that it was that way before, but the change was that in 2008, the pension plan was amended to add a COLA that didn't exist before. So as we described in our papers, and it gets into somewhat complex actuarial speak, but before that, if you chose the annuities, the COLA was taken into consideration, but there was a COLA paid if you took annuities on both, and they would drop off. It's almost like a math equation. If you get 12 plus 6 equals 12 plus 6, the 6 drops off. They're the same value because the COLAs were of the same language. So before the COLA was taken into consideration, it just didn't matter because they were of like kind annuities, you could make that subtraction. The math problem that was created by the pension plan amendment was that because now you had the A factor, which was a lump sum, when you converted it to a lump sum, was a lump sum amount which was a, without the COLA. I'm going to interrupt you because, number one, if I let you go, you're going to lose me. Okay. Okay. That's very wrong. So I thought the key change was when you're doing the factor B calculation, subsequent to the amendment, you then subtracted the COLA from the, on the supplemental side, you subtracted the COLA. In the sense that the COLA was then added in because it was part of the benefit to which they were entitled to. The COLA didn't exist before 2008. When it was added to the pension plan based upon Williams and other ERISA law, that became part of the accrued benefit, the benefit to which you're entitled. They received that. They received that. They got the COLA. Absolutely, Your Honor. It was money that they received. And if you didn't take it away through the offset, then they would be getting paid twice for the same compensation amounts. Were they getting paid twice before? Because unless I misunderstand the district court's opinion and what your opponents are saying, they thought they had something before and now they don't have it. And if it, you know, in the simplistic math that you were just giving us, the 12 minus 6, I mean, if you really had on both sides of the equation, the A and the B, the number represented by factor A or by factor B was changing in the same amount, who would care? Because at the end of the day, you get the same number at the other end, right? Yes. So something happened. Maybe you could describe it. I'm probably going to get lost the way Judge Greenway just stated might happen. But keep going with your description because it's of interest to me. What changed so that before, when you looked at factor A and you looked at factor B, everybody was okay with it? But now, you know, you put the COLAs in B, something's different about factor A than used to be or must be. No, Your Honor. See, that's where the misconception comes in for both the district court opinion and plaintiffs. That's what I'm trying to get you to explain to me. What were they getting before that they don't think they're getting now? Are they actually getting, quote, less? It's the same amount. The A has never changed. The A has never been amended. The A has been the same since the plan was adopted in 1999. So is the COLA, is whatever COLA enhancement that you've added into B so that it's now a takeaway, something that was at the same time added into A so that you got a better – No, that's the misconception. Okay. It's not pension plan plus something else. It's a separate calculation under A that takes into consideration – that has nothing to do with the pension plan, mind you. Compensation, right? It's what they've gotten. It takes into compensation that is above and beyond the code limits for a qualified pension plan. And so you calculate A. A has never changed from the time the plan was adopted in 1999 to today. It's the same amount. The plaintiffs were willing to get the same amount in 1999 as they got totally today under both plans. That has never changed. They're out nothing. The change here is from the pension plan amendment. And what that did is it served to increase the pension plan benefits they received, which then increased the offset and decreased the payment. But the ultimate A benefit stayed the same. It was just a matter of how they received it, whether it was a qualified or not qualified payment. Isn't the point that you had – under B, it used to be, let's say the calculation of what they were entitled to under the regular pension plan lump sum was $400,000. Then with the change, under an actuarial, there's an addition to say, oh, by the way, under Williams and since we've amended the plan, you're going to get 440 because we're adding the COLA, $40,000. So they get 440, but now they're arguing that when you calculate B, you don't include the 40. Precisely. That's what they're arguing. That's what they're arguing. Which we believe is completely wrong because otherwise you're then, in essence, counting the COLA under the supplemental plan. They got the 40, but we're pretending they didn't get the 40. Exactly. They received the 40. So under just looking at B, which B is a set alone value determination as what they received under the pension plan. That amount was received from the pension plan. Don't get me wrong. They got their COLA under the pension plan. They got 440. But what they want is their COLA under the supplemental plan, which they can't get. They want to reduce it by only 400. Now they're 40. Can I ask – is the real question – No, no, no. I'm sorry. Go ahead. I want to follow up on this. Why can't they get the COLA on the supplemental? Because there is no COLA for lump sums under the supplemental. The supplemental plan was never amended to add a COLA. There's no legal requirement to do so. So then what language should we use to that you say is clarifying that would say that? We believe the language is already clear that you are to offset the basic amount of early retirement pension to which they are entitled under the pension plan. To which they are entitled has significant legal meaning. When you say entitled under the pension plan, you mean the pension plan half as opposed to the supplemental plan half. Right. Absolutely. And that's maybe the misconception, too. The A factor is the supplemental plan. The B factor is what they got under the pension plan. It's that simple. There's a lot of actuarial and complex ERISA things that go on with respect to pension plans. But the supplemental calculation formula is pretty straightforward. It is in most top-down plans. Isn't the real problem here? But the district court said, well, obviously, you're talking about looking at Article VI of the pension plan under B and saying you have to do that calculation, which produced a different result. Your argument is there's no incorporation of Article VI. There's no incorporation of that. You read B according to exactly what it says. Their entitlement under the pension plan, i.e. what they got. Exactly, Your Honor. That's what we believe. We believe you just use the words of the supplemental plan and that language and the supplemental plan's definitions to come to the conclusion of what is the value that's included in the offset in Factor B. It doesn't need to have a formula for calculating that benefit. All you need to know at the end of the day is what were they paid? What did they receive under that pension plan? And that's the offset. They want it to be something less, just like the plaintiff did in AHERN, which otherwise will permit them to receive double payment for the same compensation, which is a windfall for them. All we're asking is that the offset be what they received, what they were entitled to. Nothing more, but nothing less. Okay. I'd like to get you to respond to the argument that the appellees make that you, in effect, constructively amended the plan, that you conditioned the receipt of their pension benefits, lump sum benefit, on their forfeiting something they were entitled to under the supplemental plan. Your Honor, I think that goes to the Patoni part of the decision from the district court. In that decision, you had a situation where there was an actual written plan amendment of a welfare plan, which impacted a right under the pension plan. It said that before the amendment, everybody that was a pensioner got retiree medical coverage. After that amendment, only those who elected annuities got retiree medical coverage. So this court in Patoni found that that affected a right that somehow forfeited a benefit that otherwise they were entitled to. The difference here is, we don't believe there was a constructive amendment. We think there was just a math change. The COLA was treated the way it was before, and math had to change when they chose lump sums because there was a lump sum added to one plan and not the other. It's an actuarial thing. So when that math change occurred, there was a way that we had to express it in some way. Because of the like-kind annuities that weren't like-kind anymore, you couldn't subtract apples from oranges or dollars from euros. You had to convert them to something else, so they were converted to lump sum amounts. At the end of the day, there was no amendment. There was no change, and there was no forfeiture of something that they were entitled to because, as we have explained in the briefs, at least in Patoni, you could argue that they lost their right to retiree medical coverage that they otherwise had. Here, what they want is a right to a COLA paid from the supplemental plan, and there is no right to that. And Hines says you cannot create a right that you're not otherwise entitled to. I would like to reserve... There's no diminution in value when you subtract the COLA from the supplemental plan benefit? No. They get the full amount of everything they were promised. They get the full amount of what the benefit would be. Now less of it is paid from the supplemental plan, the non-qualified plan, more of it is paid from the qualified plan. There's no diminution in rights whatsoever. A has always been the same. That total retirement benefit between the two is always the same. Okay, and that's because they have no right to a COLA under the supplemental plan? Absolutely, Your Honor. And because they got the COLA. They're ending up getting the same amount. If it were construed the way they want, they'd get basically double COLA. You're absolutely right, Your Honor. I'd like to preserve whatever time I can for a bottle. Thank you. Thank you. Good morning, Your Honors. Alan Sandals for Plaintiffs' Appellees, Zabrowski et al. May it please the Court, I'm sorry that despite all the pages of briefing, there seems to be some confusion here about how the plan operated. And the basic point is that... How am I confused? I'm not saying anyone in particular is confused, Your Honor. I'm trying to say that when you look at the formula 7.2.2, you see the term 112th. The case, we believe, begins and ends because the term 112th is there. No, it says monthly? Well, it also says monthly, and the parties agree that's redundant because 112th is there. But the reason 112th is there is because all of these benefit calculations are X percent times an amount of earnings times perhaps some other factor, and that yields an annual pension benefit. And if you want to make it a monthly pension benefit, you just divide it by 12. And the 10 years of history under this plan showed that it was a gross monthly A minus the monthly from the pension, leaving in that monthly amount from the supplemental plan. Well, why don't you go directly to Mr. Graham's argument? You know, I feel like the character on the sitcom said I was told there would not be math here. Okay. Well, that's as far as the math goes. But obviously, there's a whole lot of math here going back and forth. But he's laid out his case in his briefing and here before us as the assertion that they're getting the same amount of money. They're just getting it out of one pot instead of another, and that's a function of higher order actuarial things. Don't worry yourself about that. I mean, who's more polite than that? But at the end of the day, that's what it is. They're getting the same amount of money, and what they really are trying to do is double dip. So why don't you speak to that? Are you guys trying to double dip? No, absolutely not. And here's the reason why, if I may respond. The plan, the retirement income is coming from two pots. The pension plan has a compensation limit under the tax code. There's no dispute about what that amount is. And the plaintiffs had a right to take that as either an annuity or a lump sum. And under the plan and under ERISA generally, those two different forms of payment have to be actuarially equivalent. And it's true that it used to be that only the annuity had a COLA. But the plan caught up with the law, in effect, and was amended to make it legal. So under B, assuming B means what they got under the pension plan, is that what that means? No, that doesn't mean that, Your Honor. It doesn't? What does it mean? It means the result of the formula in Article 6 of the pension plan. It doesn't say that. Well, because it says the... Entitled to which they're entitled from the pension plan. If they're entitled, then if they got 440, you're saying they got more than that to which they were entitled, using my 440? If I might point to the language first, Your Honor. It says B equals the basic amount of normal retirement benefits, and that's a capitalized defined term. And it just so happens that the part of Article 6 of the pension plan that we point to has that very title. In fact... But do you agree it's early? I think the fact is that they had enough age and service that the normal early distinction goes out the window in this case. But something that's capitalized in one document does not necessarily incorporate the definition. of a capitalization in another document, unless there's a provision of that document that says capitalized terms herein shall have the meaning attributed to them in the other document. Well, we've cited some testimony to the effect of the intention to mirror the pension plan, and that's in the brief. But the only place you can find the mathematical answer of what to plug in to B is Article 6 of the regular pension plan. And that yields a monthly or annual amount. You only get to a lump sum by use of another section of the pension plan. You only get to a COLA by use of another section of the pension plan. Excuse me. I'm not suggesting that the terms of the individual plans are not meaningful, but we were on the verge, I think, of getting you to describe where a logical flaw is in the appellant's position, right? And stick with Judge Rendell's example of the 400 and 440. You heard the assertion. You read the briefs. I'm asking you to just tell us where is the logical flaw in the assertion that you got 440, so you don't get to get it at the back end too, which is what I understand them to be saying. What's wrong with that argument? Well, they had a right to a pension plan, and they could take it either as an annuity or lump sum. It should not matter to the supplemental plan whether someone elects to take a lump sum, because there are risks involved in taking a lump sum. When you say it shouldn't matter, doesn't it matter that you got the money once? No, it doesn't, because of what it says in it. You weren't entitled to it? No, they were entitled to it, Your Honor. They had the statute and the case law said that they were entitled to the COLA from the pension plan. Okay, so they're entitled to it, so B should be 440. Well, no, B is a monthly amount, Your Honor. A is a monthly amount, B is a monthly amount, and the net result, which is what the supplemental plan owes, is also a monthly amount, which can then be converted to either an annuity or another form of annuity or a lump sum under Articles 10 and 11 of the supplemental plan. There was no double payment of the COLA. The supplemental plan didn't give them a COLA. Is the problem that we're just not sophisticated enough to understand that if you get the COLA under the pension plan and the, well, that if the purpose of the A minus B formulation is to come up with a way of describing what you're entitled to at the end, that those numbers don't, they don't actually, or they shouldn't take account of the fact that you're That's what it sounds like you're saying, that never mind what's happening over there. Well, in fact. Focus right here on B, just look at B. The short answer as to why you don't take account of the COLA is because 7.2.2 doesn't call for you or allow you to take into account the COLA. That's the key point, right? Yes, absolutely. Okay. But they got it, and you said they were entitled to it. They got $440,000. You're saying the calculation for the supplemental should be, oh, they only got $400,000. So they won't be getting the 40 twice. The 400, Your Honor, is a lump sum type number. It wouldn't be in that range. A, B, and the result in C of 7.2.2 are all monthly amounts. Well, then I don't understand what happens when you go from monthly to lump. Tell me why that makes a difference. I mean, monthly is going to be different because your cost of living is not going to be actuarially decided up front the way Williams says you should. Your cost of living is going to be over time, and it's not going to be calculated right up front. So you have to do it bit by bit, don't you? Well, to go back to the question you asked, Mr. Graham, yes, it's confusing to lay people, including me, how can you project what the value of this COLA is, but actuaries will then make an assumption. The lump sum is easy. I'm sorry. The lump sum is easy. Yes. Okay. So they do the numbers, and they come up with 40. And they plunk it on there, and your clients get $440,000. As a lump sum, correct. They got it. The monthly, they're not going to say up front what the COLA is because it's going to be over time. There might be a cost of living adjustment every year, so you don't really know. Isn't that the answer? Well, that is another answer, Your Honor. Yes, B has to be the starting number without a COLA because you don't know what... For monthly, it does. Right. You don't know... But for a lump sum, take Gibbons-Williams, it has to include the formula. Correct. But that's an issue of what you do with the result of the formula later on in terms of a different annuity structure or a lump sum. But the result of the formula is a monthly amount, and you cannot know what the COLA will be next year or the following year, and so on. All right. But tell me how your clients are not getting the COLA twice by virtue. They're getting a COLA under the regular, and they're getting a COLA under the supplemental, under your calculation. Okay. I'm sorry that that wasn't clear in the briefing. Okay. $80,000. There was only a COLA that was paid under the pension plan by virtue of the amendment. Because they elected lump sums under the supplemental plan, they have no COLA from the supplemental plan. They have no COLA from the supplemental plan. I'm sorry. I thought we'd made that clear from the briefing. All right. Let's assume that 500,000 is the top number, is A. Okay. Okay. And they got 440. Okay. So under his reading, they're entitled to 60,000. Under your reading, they're entitled to the 440, and then they're entitled to another 100,000. Okay. Isn't that correct? The premise of the question is somewhat incorrect because A would never be a number as large as 400 or $450,000. No, I'm not saying A is 500. B is 400 plus 40. Okay. Well, it wouldn't be 100,000x because it would be a monthly amount, Your Honor. It would either be an annual or a monthly amount under this formula. I get the feeling that the top hat we're really talking about here is sort of like a magic thing. You put it in the monthly hat, and it comes out so completely different. Whether you dice this thing into 12 or not, what is wrong with the logic and the math you've just heard from Judge Rendell? Well, again, there's no COLA that was paid, these gentlemen, from the supplemental plan. No, they got it in the pension plan. The pension plan COLA only applied to the amounts that were pensionable under the pension plan, and the larger part of their compensation wasn't even covered by the pension plan. Okay. And that's why they're getting more. Yes. But why should we deduct from what they're... What the defendants did... I'm sorry. All right. I'm arguing. I'm trying to answer your question. I hope that's clear. What the defendants did is, okay, you have a legal right under the law to a COLA in your the same amount from your supplemental plan, which under Bettoni is an indirect backdoor violation of the cutback rule, because you've taken away the economic benefit of the COLA in the pension plan, which was their legal right. You've burdened the exercise of a choice of a lump sum. In fact, they made clear in their letters that there was no offset if they took annuities from the pension plan. So isn't what's really going on, if I'm understanding this, is that your clients are lump sum on the pension plan side and lump sum on the supplemental side. There used to be no COLA on the pension plan side and no COLA on the supplemental side. Now there's a COLA on the pension plan side, but now the lump sum plus COLA. Correct. Sure. But now on the supplemental side, it's lump sum minus COLA. So your argument is, it's not that that minus COLA on the supplemental side evens it out. It's that it creates a detriment for your clients. Correct. It erases the value of the COLA in the pension plan. Let's make this really easy because I'm not as fancy as they are at math. If the pension plan lump sum was $1 and the COLA was $0.50. Of the dollar. Right. Or on top of. Right. So you get $1.50 on the pension plan side. Your argument is, on the supplemental side, obviously the supplemental is, the top hat is not going to be equal to the pension. Right? Right? Yes. Sure. I mean, the numbers will be different. So you get $0.50, but now you're subtracting a COLA amount that might not be equivalent to the COLA amount on the pension plan side, but it's substantially similar. So your clients are saying, well, wait a minute now. Now, I have no benefit as a result of the company essentially trying to even things out. Correct. And in fact, it was to the penny, Your Honor. The letter said we're going to offset the same amount of the COLA bump from your supplemental. So in my hypothetical, it would be minus $0.50 on the supplemental plan side. So there's a net zero. Right. Which means, thank you very much for saying I had a right to a COLA because you just took it away from me through the vehicle of the supplemental plan. But you said that they're not getting double payment because it's $1.12, because it's monthly. And I don't understand that. I wasn't clear. Your Honor, the supplemental plan, because they took lump sums, has no COLA. Exactly. And they're not getting any COLA on that portion of their retirement income. It's only the smaller pension plan part that is giving them the COLA. Right. And it's only paid once because by definition, it can only be paid once by that very pension plan. Right. So I don't understand where my hypothetical then is wrong. In other words, if the number on top is $500,000, on A, A is $500,000. And let's say for the sake of argument that B is, you say it's much less, like $100,000. Okay. And the COLA on that is $20,000. Under my reading of B, you'd subtract $120,000, i.e. the amount you got under the normal pension plan. No. If we can re-roll the argument tape. We established earlier, I hope, that the plan 7.2.2 uses the term $112,000. I know. And I'm confused as to how that's working for you. Because that's how a pension benefit is calculated. One and a half percent times a certain amount of pay times the multiplier for years of service. And then that's the annual pension benefit. And if you divide by 12, it's a monthly benefit. So I'm sorry to be impertinent, Your Honor. But when you use the numbers in the $100,000 range, that suggests wrong sums. Well, but it's $112,000 of A minus B times C. C is a neutral factor. Okay. So when I'm calculating B, I don't care about $112,000. Because that happens after I've done the A minus B times C. I mean, I'm not a mathematician. But to my mind, you do A minus B times C. You get a number. And then you multiply it by $112,000. The little I remember of math, never do math in public, is it doesn't matter when you multiply by $112,000. But the very use of the term, and in fact, the redundant use of the term monthly, means that these are supposed to be annuity amounts. And the plan is very clear that when you want to convert to a lump sum, that's an entirely different section of the plan. So the flaw in the hypothetical that Judge Rendell just posed to you is that on the supplemental side, you can't do $100,000 plus $20,000. That what's really happening is if it's $500,000 on the left and a lump sum on the left for pension plan, there's a COLA calculation, and now it's lump sum plus a COLA. On the right side, the supplemental plan, it's not $100,000 plus $20,000 because there is no addition of a COLA because your clients chose lump sum. That's correct. So that the calculus is really $100,000 minus the COLA amount. Right. So that if the COLA amount on the left side of the ledger, the pension plan side, let's say, was $20,000, right? You have a minus $20,000 on the supplemental plan side. Well, again, I would go back to the point that A is monthly, B is monthly, or A is annual, B is annual, and the difference is divided by 12. But the real bottom line is your clients are arguing that there was no COLA addition on the supplemental plan side. There was only a subtraction of a calculated COLA on the supplemental plan side. And I'm over my time, but if I may quickly just say... Believe me, this I think we all... Okay. Well, yes. The plan, when you look at the terms of the plan, and it's a standard actuarial practice is elsewhere in the record. It's 10 years of history of calculations. Monthly gross A minus monthly pension B equals net benefit, net monthly benefit due from the supplemental plan. It's not lump sums. It was never using lump sums until the computational change, which was admitted to be a change pursuant to a new interpretation. If your honors don't agree with me on the plan interpretation, I think there is still a cutback claim because it's overt, transparent in all the documents that the plans gave with one hand and took away with the other. And although there are some superficial differences between the medical plan of Batoni and the supplemental plan here, the basic point is that the law doesn't permit backdoor violations of ERISA. You can't use a different plan to be the instrument of punishment. Let's... When you say the instrument of punishment, was there any finding by the district court that there was bad faith in the decision making by the committee? Well, there... I'm sorry. I didn't want to cut you off. No, that's a straight up question, and I think there's probably a yes or no answer to it. There is evidence. Was there a finding? I asked, is there a finding by the district court that there was bad faith by the committee? There was a finding that the interpretations had no basis in the plan, which I equate to being bad faith in some way. Well, that... I'm not asking what you equate it to. I'm just asking about the record, okay? Fine. In the record, is there a finding of bad faith by the district court? No, there isn't. And I would point out that's not required under the statute, but I'll wait for your next question, Your Honor. Good. Okay. So, the standard we're operating under is Goldstein, right? Correct. Okay. Now, Goldstein says when there's some ambiguity, the plan administrator, should it be granted discretion, is entitled to have that discretion honored in the absence of some showing that there's bad faith, a lack of good faith in fair dealing. Am I correct about the law? That's true. Correct. Okay. So, your argument has to depend on, as the district court said, a decision that 7.2.2 is unambiguous, and unambiguously in your favor. Is that correct? That would be part of it, yes. That would be one way to win that claim. Okay. When you say that's part of it, I mean, that's the whole of it, right? Because if there's ambiguity and it's undisputed that the committee's got discretion here, then unless there's bad faith, their view of that has to govern, doesn't it? Well, Goldstein sets up an interesting test, because we know that whatever they did, there's no deference, there's no judicial deference, as there would be in a normal ERISA case. And although the plan allowed discretion, and we say the 1990 plan did not, that's well documented in a brief. Right, right. But you have to, as you say, use the duty of good faith, and it's not a test solely of motive, and we cite a number of cases in the brief, to the point that if you act in a manner to frustrate expectations, if you change position, for example, if you have done it this way for 10 years, now all of a sudden you change it, that is evidence of bad faith in the parlance of the duty of good faith and fair dealing. And that's also documented in the district court's decision, and in the brief. And finally, I would say that... It comes down to a question of whether there's ambiguity or not. Is that right? Well, again, I would say even if there were room to interpret these terms, there's other evidence in the record which negates the good faith of that interpretation. And finally, there's always the anti-cutback claim. Okay. Thank you for letting me stay over. Thank you. Thank you. Rebuttal? I want to address three points. Come to the microphone. Great. May it please the court. First, I want to address the monthly issue that plaintiffs have been forcing throughout this case. It is undisputed by their expert, our expert, and the plan's actuary that the benefits under 7.2.2 for all plaintiffs were calculated as monthly lump sums. So in answer to Judge Rendell's question, there is absolutely nothing wrong with your presentment of this as you got 400, now they got 440, the offset should be 440. It doesn't matter how you present it because under the law, those things have to be actuarially equivalent. So when the actuaries are performing their magical tasks of taking the monthly benefit that is created and converting it to a lump sum, they're using the actuarial assumptions to get to the same amount. So that perception that plaintiffs are pushing, that somehow magically something is wrong with the idea that as a lump sum, they had 400, now got 440, you shouldn't offset the 440 because that's what's received is just completely baseless. Well, weren't they, they were alerted in the letter that the value of the total benefits under both will be the same before and after reflecting the COLA on the lump sum and the pension plan. Yes, Your Honor. And they were alerted to that. The second point I want to direct is this whole push to Article VI. Judge Rendell is correct. It's nowhere in Factor B. It doesn't say Article VI. And the drafter of that supplemental plan was pretty clear when he wanted to direct you to the pension plan. In at least five places that we have put into the brief, when they want to tell you to go to a section, they said go to Section 2.3, TITLE, in caps, BOLDED. I mean, they didn't mess around. That's not here. What the drafter here wanted you to do is to offset the value, the value of the pension plan benefit that they received, the benefit to which they were entitled. It has legal significance. The legal significance is it's the amount of the accrued benefit. The accrued benefit equals the COLA here. So say if their expert, who in deposition admitted that, our expert, and just frankly the law, the courts have said that. I'm confused about your nomenclature. When you talk about the pension plan benefit, in what we're discussing in this case, that's separate and apart from the discussion of the supplemental plan, or are you saying it's all one thing? They're two separate plans. The only time the pension plan comes into relevance for the supplemental plan is in those five places where the drafter sent you there and said, go see Article 2 of the pension plan with TITLE, or to get the value of the benefit they received to offset. Because as I said at the introduction, the whole point of a top hat plan is to give highly paid executives additional benefits above and beyond what they could get under a qualified plan. And the A factor is giving them that. But what you don't want to do, and what employers are not required to do, is give them more than the amount of benefit they wanted to give them. And here all you're doing is you're not changing the amount of the retirement benefit to which they were going to get from both plans. That amount is the A factor. It has never changed. So what is it that – what is the mistake that the appellees are making when they argue that the supplemental plan, now offset by the COLA, means that there's a net zero with regard to the COLA because the offset on the supplemental, that is the subtraction of the COLA, is equal to the addition of the COLA on the pension plan side? What's the flaw? What's the flaw? There's a net zero to them under the supplemental plan. That's fair because they don't get any more under A. There's a net plus for them because they have now gotten the COLA under the pension plan. Plaintiffs want to pretend like they didn't get the COLA under the pension plan. They got it. They received it. They all got multiple hundreds of thousands of dollars more under that COLA on the pension plan. What they want is they want their cake and eat it too under the supplemental plan too. The benefits they're asking for in this case and what we believe the district court made error on are coming from the supplemental plan, not the pension plan. Can you rebut or respond to the assertion that we hear from Mr. Sands, if I understood his argument right, that they're entitled to eat that cake because that's the way it was being handled for years, that there was a course of dealing and you changed the course of dealing so that even if there was ambiguity in 7.2.2, the interpretation that your clients gave it couldn't be viewed properly as having been taken in good faith? Judge Shorten, I think it goes back to what Judge Riddell was saying in the letter that we had sent to them. It didn't change. They just want to say it changed. They have no basis for saying it changed. They want to create a smoke and mirror approach to say it changed. Without COLA it was simple. Exactly. Without the COLA, when you took an annuity, you had a COLA on both sides, before and after. Nothing changed when you took an annuity. But when you had a lump sum before, there was no COLA, period. So you didn't have to worry about it. But what changes is when you have the COLA, even the monthly amount of the – it's not the calculation formula that needs to be in B. It's the value of what they received under the pension plan. You're just taking the amount they got and plugging it into the equation. That's simply what you're doing. And what they got included the COLA. I'm going to use smaller numbers. I like smaller numbers. On the pension plan side, my lump sum per annum is $100,000, right? There's a calculation that you would use on the pension plan side to give me a COLA. Is that right? Yes. It would be 3% of the cost of living. All I want to know is, is there a calculation you answered? There is, yes. Okay. Let's say that the math would equal $10,000. Okay? So that would mean if I did a lump sum on the pension plan side, I'd get $110,000 in that year. Is that right? Well, actually, if you're doing a lump sum, you're getting a lump sum of the year. It's not just the year. It's correct. You just get it. But, yes. In the year that we're talking about, I would get $110,000. Exactly. Is that right? Yes. Thank you. Now, in that same year, because I'm a bigwig, there would be a top hat calculation as well, right? Yes. Okay. So let's assume for that year that the top hat calculation would be $50,000. Is that crazy? It is because it would probably be larger than the pension plan amount. Because that's the whole point. Great. It would be larger. $200,000. Great. I want to work with whatever numbers you want. That's fine. $200,000. Great. I feel great. I'm rich. Okay. $200,000. Now, there would be a COLA. I'm sorry. Right. If I'm understanding what the company is doing and what they're arguing, my hypothetical, they're arguing that on that supplemental plan side, the company is subtracting from that $200,000 an amount of money, right, equal to the amount of money that they're receiving on the pension plan side. Is that right? Yes. Yes. Okay. Now, is there a flaw in that presentation? Is that not what's happening? No, it's exactly what's happening. It's exactly what Judge Rendell had been saying earlier. There's nothing wrong with that and there's no flaw. Beautiful. My colleagues say great stuff all the time, but I'm just going to talk to you. Absolutely. So in the hypothetical I pose, on the supplemental side in which there's $200,000 benefit, subtracted from that amount, right, as of today, is an amount equal to the amount that I would get for a COLA on the pension plan side. Is that right? Maybe I could put it a different way. You have the $200,000 as the A factor. Okay. B, you're subtracting the amount they would have received, the accrued benefit, about they're entitled to under the pension plan, which would be $110,000. Am I correct? Okay. Which would then give you a supplemental plan payment of $90,000. So at the end of the day, they're getting $90,000 plus $110,000, which is still the $200,000. They're out nothing. And they're not impacting any right, any obligated right under a pension plan, which is where the anti-cutback provisions apply. They don't apply to a supplemental plan. So as Hind indicated, you can't create an entitlement to which you're not entitled. And there is no COLA right under the supplemental plan. What plaintiffs want to do is, through smoke and mirrors, make it look like they're not getting it from the supplemental plan, that you're somehow impacting this pension plan payment. But that's not true. They're getting everything they were supposed to get from the pension plan. In fact, through the COLA amendment, they got more, which defeats any breach of fiduciary duty claim under the pension plan. There's no loss. On this side, you have a top hat plan, which is exempt from all of those rules under ERISA. So there is no cutback. There is no breach of fiduciary duty. And that's the benefits they say they're allegedly forfeited, are those supplemental plan benefits. And that is permissible under the law. Do you have any further questions? Thank you, Your Honor. No, thank you. Could we see counsel for a moment, please? Turn the microphone. Yeah, it's kind of sidebar but front bar. Is that possible, Michael? Or we can turn them off, actually. Yeah. Thank you. All right. We'll recess until 1030. We might be a little late.